Int Tracking Number: 00040000745236590447852840000000



Ditech Financial LLC
Attention: Loss Mitigation, T-214
2100 East Elliot Road, Building 94
Tempe, AZ 85284

November 4, 2017

ABRAHAM AKALU and SENAIT MAMO
7807 GLENISTER DR
SPRINGFIELD, VA 22152

Re:   Ditech Financial LLC, ("Ditech")
      Account Number:   0037096591
      Property Address: 7807 GLENISTER DR
                        SPRINGFIELD, VA 22152

Dear ABRAHAM AKALU and SENAIT MAMO:

**Congratulations!** You are approved for a permanent modification. This is the first step towards qualifying for a more affordable mortgage payment. Please read this letter in its entirety so that you understand all of the steps you need to take to modify your mortgage payments.

**What you need to do:**
To accept this offer and take advantage of this opportunity, you must sign and return the enclosed Agreement by 12/04/2017. After the signed Agreement has been received, your mortgage will then be permanently modified. If you do not provide the required signed Agreement by the above-referenced date, this offer will end and your loan will not be modified.

If you have any questions, please call us toll-free at 1-800-643-0202, Monday - Friday 7 a.m. to 8 p.m., Saturday 7 a.m. to 1 p.m. CST.

Ditech Financial LLC
Attention: Loss Mitigation, T-214
2100 East Elliot Road, Building 94
Tempe, AZ 85284

Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information: PO Box 6176, Rapid City, SD 57709-6176.

Sincerely,

0037096591
GSE Mod Cover Letter

2017110417.3.0.1340-J20150825Y

8/19/2016
LTR-1019

Ditech
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., Saturday 7 a.m. to 1 p.m. CST

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Loan Tracking Number: 00040000745236590447852840000000

## Account Modification
## TRANSPARENCY NOTICE

This Account Modification Summary is intended to be a clear and simple summary of the final account modification that we are pleased to offer you. We believe the account modification will help put you in a better position to make the account payments. When you sign and return the enclosed account modification agreement, you are agreeing to a new and permanent account modification. Please thoroughly review all of the enclosed documents to ensure that you understand the details of your account modification agreement.

**Summary of Your Modified Account:**

Your new balance is $201,683.13. To calculate this new account balance, we added past due interest in the amount of $1,651.38 and taxes and insurance of $2,033.22 totaling $3,684.60 to your principal balance. Unpaid late fees are not included in this amount and will be waived when your account modification is finalized. If your account has mortgage insurance, the mortgage insurance premium may increase as a result of the higher mortgage loan balance.

The current interest rate of 2.000% is changing to 3.375% for the life of your modified account.

Your final payment date, which is your new maturity date, is November 1, 2057.

**Your New Mortgage Payments:**

Your new total modified monthly mortgage payments of $1,423.46 are made up of principal and interest of $766.25 and an initial escrow amount of $657.21. Escrow payments are collected for payment of items such as property taxes and insurance and may change. We will notify you of any adjustments to the total monthly payment.

Your total monthly payments will be due on the 1st of the month starting the 1st of December, 2017.

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 3.375% | 11/01/2017 | $766.25 | $657.21, may adjust periodically | $1,423.46, may adjust periodically | 12/01/2017 | 480 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

If you have questions regarding the modification agreement or the steps you must take to complete this process, please call your assigned account representative MICHAEL R at 1-800-643-0202, extension 23058 Monday - Friday 7 a.m. to 8 p.m., Saturday 7 a.m. to 1 p.m. CST.

0037096591
Mod Transparency Notice

2017110417.3.0.1340-J20150825Y

09/18/2015
LTR-431

Investor Tracking Number: 0004000074523659044785284000000

Investor Account # 1692515380

When Recorded, Return to:
Ditech Financial LLC
2100 East Elliot Road, Building 94 T214
Tempe, AZ 85284

This document was prepared by Ditech Financial LLC

[Space above This Line for Recording Data]

Customer(s)[1]: ABRAHAM Y AKALU and SENAIT M MAMO
Lender/Servicer ("Lender"): Ditech Financial LLC F/K/A Green Tree Servicing LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 07/25/2003
Account Number: 0037096591, Recorded 07/31/2003, Book 14865 Page 1766, Instrument No. 2003028157.004
Original Mtg Amt: $247,500.00, New Modified Amt: $201,683.13, Existing Debt: $199,200.53, New Money: $2,482.60
Property Address ("Property"): 7807 GLENISTER DR, SPRINGFIELD, VA 22152, PARCEL ID NUMBER: 0892 05 0404
VA Exemption Code 58.1-809

### MODIFICATION AGREEMENT

This Modification Agreement ("Agreement"), made this ___ day of _____, 2017, between the Lender and Customer, amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 07/25/2003 and recorded in Book or Liber 14865, at page(s) 1766, and/or Document #2003028157.004 of the Recorder _____ Records of Fairfax County
   (Name of Records)            (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
7807 GLENISTER DR, SPRINGFIELD, VA 22152
(Property Address)

the real property described in the above-referenced Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 11/01/2017, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $201,683.13 consisting of the unpaid amount(s) loaned to Customer by Lender plus any interest and other amounts capitalized.

2. Customer promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.375%, from 11/01/2017. Customer promises to make monthly payments of principal and interest of U.S. $766.25, beginning on the 12/01/2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.375% will remain in effect until principal and interest are paid in full. The new monthly payment amount does not include any amounts owed for escrow. Customer may refer to the monthly billing statement for the escrow amount owed. If on 11/01/2057 (the "Maturity Date"), Customer still owes amounts under the Note and

0037096591
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument         Form 3179 1/01 (rev. 09/16)
                                                                                                LTR-442


2017110417.3.0.1340-J20150825Y

the Security Instrument, as amended by this Agreement, Customer will pay these amounts in full on the Maturity Date. Customer's payment schedule for the modified account is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 3.375% | 11/01/2017 | $766.25 | $657.21, may adjust periodically | $1,423.46, may adjust periodically | 12/01/2017 | 480 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Customer is not a natural person and a beneficial interest in Customer is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Customer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Customer must pay all sums secured by the Security Instrument. If Customer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Customer.

Customer understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Customer acknowledges that Lender may be required to report to the Internal Revenue Service any debt forgiveness of $600 or more in principal, subject to certain exceptions that may or may not apply to Customer. If required, such reporting may result in consequences regarding Customer's federal, state or local tax liability. In addition, if Customer receives public assistance, the forgiveness of debt may affect Customer's eligibility for these benefits. Ditech cannot provide any advice or guidance

0037096591
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

2017110417.3.0.1340-J20150825Y

Form 3179 1/01 (rev. 09/16)
LTR-442



Jenn Tracking Number: 00040000745236590447852840 00000

regarding possible tax consequences or effect on any public assistance benefits. Customer may wish to consult with a tax professional about any possible tax consequences and/or Customer's public assistance office regarding other consequences that may result from the forgiveness of debt.

(f) Customer agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Customer.

(g) Customer authorizes Lender, and Lender's successors and assigns, to share certain Customer public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Customer's account balances and activity, with an authorized third Agency or similar entity that is assisting Customer in connection with obtaining a foreclosure prevention alternative, including the trial period plan to modify Customer's account ("Authorized Third Party").

Customer understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Customer's account), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the trial period plan to modify Customer's account, to any insurer, guarantor, or servicer that insures, guarantees, or services Customer's account or any other mortgage account secured by the Property on which Customer is obligated, or to any companies that perform support services to them in connection with the account or any other mortgage account secured by the Property on which Customer is obligated.

Customer consents to being contacted by Fannie Mae, Lender or Authorized Third Party concerning mortgage assistance relating to Customer's account.

4. By this paragraph, lender is notifying customer that any prior waiver by lender of customer's obligation to pay to lender funds for any or all escrow items is hereby revoked, and customer has been advised of amount needed to fund the escrow items.

Customer will pay to Lender on the day payments are due under the Account Documents as amended by this Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Customer shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Customer shall pay Lender the Funds for Escrow Items unless Lender waives Customer's obligation to pay the Funds for any or all Escrow Items. Lender may waive Customer's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Customer shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Customer's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Account Documents, as the phrase "covenant and agreement" is used in the Account Documents. If Customer is obligated to pay Escrow Items directly, pursuant to a waiver, and Customer fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Account Documents and this Agreement and pay such amount and Customer shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in

0037096591
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument


2017110417.3.0.1340-J20150825Y

Form 3179 1/01 (rev. 09/16)
LTR-442



MERS Tracking Number: 000400007452365904478528400000

accordance with the Account Documents, and, upon such revocation, Customer shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Customer for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Customer interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Customer any interest or earnings on the Funds. Lender and Customer can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Customer, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Customer for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to Customer any Funds held by Lender.

5. Customer also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Customer's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Customer is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Customer waives any Timely Payment Rewards rate reduction to which Customer may have otherwise been entitled; and

   (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Customer understands and agrees that:

0037096591
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

2017110417.3.0.1340-J20150825Y

Form 3179 1/01 (rev. 09/16)
LTR-442



(a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Customer agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. Customer understands that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If Customer elects not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Customer will not be eligible for a modification.




Inv. Tracking Number: 00040000745236590447852840000000

In Witness Whereof, the Lender and I have executed this Agreement.

Ditech Financial LLC F/K/A Green Tree Servicing LLC
Lender

By: _____
Anita L. Garvin
Director, Default Services
License #: 1082252

_Abraham Akalu_
ABRAHAM Y AKALU

Dec 2 - 2017
Date

_____
Date

_____
SENAIT M MAMO

_____
Date

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

[Space Below This Line For Acknowledgments]

0037096591
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

2017110417.3.0.1340-J20150825Y

Form 3179 1/01 (rev. 09/16)
LTR-442

State of Virginia,

City/County of Fairfax , to-wit:

I, Ronald Jacobs , a notary public of the City/County of Fairfax , State of Virginia, do hereby certify that

**ABRAHAM Y AKALU and SENAIT M MAMO**

whose name is signed to the writing above bearing date on the 2 day of December, 20 17 , has acknowledged the same before me in my State aforesaid.
Given under my hand this 2 day of December , 20 17 .

[Seal]

_Ronald M Jacobs_
Notary Public

My Commission expires: December 31, 2020

RONALD JACOBS
NOTARY PUBLIC
Commonwealth of Virginia
ID# 7682493
My Commission Expires
December 31, 2020

EXHIBIT A

Lot Four Hundred Four (404), Section Three (3), of the Subdivision of WEST VIEW HILLS, as the same appears duly dedicated, platted and recorded in Deed Book 2184, at Page 571, among the Land Records of Fairfax County, Virginia.

PARCEL ID NUMBER: 0892 05 0404